UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## Case No. 12-CV-20790-COOKE/WHITE

# The attached hand-written document
# has been scanned and is
# also available in the
# SUPPLEMENTAL
# PAPER FILE

(Rev. 09/2007) Complaint Under The Civil Rights Act, 42 U.S.C. § 1983

FILED by _____ D.C.

FEB 27 2012

STEVEN M. LARIMORE
PROVIDED CLERK U.S. DIST. CT.
JEFFERSON CI ON of FLA. – MIAMI

FEB 2 4 REC'D

FOR MAILING _____

# UNITED STATES DISTRICT COURT
## Southern District of Florida

Case Number: _____

James Melvin Cramer
_____
(Enter the full name of the plaintiff in this action)

v.

Christopher Beiser, Medical Student ?
Page Armand Smith, Doctor
Martha Humphries, Warden
William Churchwell, Warden
Cummings, Warden
_____
(Above, enter the full name of the defendant(s) in this action)

Healthcare Services Administrator
(R.M.C and Dade C.I.)
Jwio Poveda, Doctor
Jorge Aguiar, Doctor
Leilani Insua, Medical Director
Ms.   Tae, H.S.A. Representative
Department of Financial Services

## A COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983

Instructions for Filing:   Filing in Pro Se

This packet includes four copies of the complaint form and two copies of the Application to Proceed without Prepayment of Fees and Affidavit. To start an action you must file an original and one copy of your complaint for the court and one copy for each defendant you name. For example, if you name two defendants, you must file the original and three copies of the complaint (a total of four) with the court. You should also keep an additional copy of the complaint for your own records. All copies of the complaint must be identical to the original.

Your complaint must be legibly handwritten or typewritten. Please do not use pencil to complete these forms. The plaintiff must sign and swear to the complaint. If you need additional space to answer a question, use an additional blank page.

Your complaint can be brought in this court only if one or more of the named defendants is located within this district. Further, it is necessary for you to file a separate complaint for each claim that you have unless they are all related to the same incident or issue.

cat / div  1983/550/MIA
Case # _____
Judge _____ Mag  PKW
Motn Ifp  yes   Fee pd $  Ø
Receipt # _____
060/F7

Page 1 of 5

(Rev. 09/2007) Complaint Under The Civil Rights Act, 42 U.S.C. § 1983

There is a filing fee of $350.00 for this complaint to be filed. If you are unable to pay the filing fee and service costs for this action, you may petition the court to proceed in forma pauperis.

Two blank Applications to Proceed without Prepayment of Fees and Affidavit for this purpose are included in this packet. Both should be completed and filed with your complaint.

You will note that you are required to give facts. THIS COMPLAINT SHOULD NOT CONTAIN LEGAL ARGUMENTS OR CITATIONS.

When these forms are completed, mail the original and the copies to the Clerk's Office of the United States District Court, Southern District of Florida, 301 North Miami Avenue, Miami, Florida 33128-7788.

**I.    Parties**

In Item A below, place your name in the first blank and place your present address in the third blank.

A.    Name of plaintiff: _James Melvin Cramer_

Inmate #: _Y02665_

Address: _Jefferson C.I., 1050 Big Joe Road, Monticello, Florida 32344_

In Item B below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use Item C for the names, positions, and places of employment for any additional defendants.

B.    Defendant: _Jorge Aguliar_

is employed as _Medical Doctor_

at _Dade Correctional Institution_

C.    Additional Defendants: _William Churchwell_
_Warden, Florida's Department of Corrections_
_Previously of Dade C.I.; Now Washington C.I._
_Continued Page 2 A_

Page 2 of 5

PAGE 2A.

REFER TO PAGE (2), I, D:

DOCTOR PAGE ARMAND SMITH; AT THE TIME OF THE OFFENSE, HE WAS EMPLOYED AS THE HOSPITAL WARD SUPERVISOR OF LAKE BUTLERS RECEPTION AND MEDICAL CENTER'S PRISON FACILITY, IN LAKE BUTLER, FLORIDA, P. O. BOX 628, ZIP CODE: 32054. LICENCE NUMBER: ME54810

IN REFERENCE TO THE FLORIDA HEALTH DEPARTMENT, DOCTOR SMITHS IS NOW A FAMILY PRACTIONER AT 7765 S. COUNTY RD 231, LAKE BUTLER, FLORIDA 32054

E: DOCTOR CHRISTOPHER BEISER; AT THE TIME OF THE OFFENSE, HE WAS EMPLOYED AT RECEPTION AND MEDICAL CENTER, LAKE BUTLER, FLORIDA 32054, AS A DOCTOR AT THE PRISON HOSPITAL. DOCTOR BEISER POSED AS MY RESIDENTIAL DOCTOR, BUT LATER, ON HIS LAST DAY OF SERVICE, HE ADMITTED TO ME THAT HE WAS A MEDICAL STUDENT INTERN. I HAVE TRIED TO GET HIS PRESENT ADDRESS FROM FLORIDA'S HEALTH DEPARTMENT, ONLY TO FIND OUT THAT THEY NEVER HAD AN ADDRESS FOR DOCTOR BEISER, BECAUSE, UNLIKE WHAT THE LAW DEMANDS FOR DOCTORS AND INTERNS, DOCTOR BEISER WAS NEVER REGISTERED WITH FLORIDA'S HEALTHCARE DEPARTMENT.

(LEILANI INSUA)        MS     TPTE

F: PRISON HEALTHCARE SERVICES, HEALTHCARE SERVICES ADMINISTRATOR

I AM INFORMED BY DADE CORRECTIONAL INSTITUTION THAT THE LIBRARY, NOR LAW LIBRARY HAS THE ADDRESS OF PRISON HEALTHCARE SERVICES. I HAVE ALSO SENT A REQUEST TO MEDICAL AT DADE CORRECTIONAL INSTITUTION, BUT THEY HAVE NEVER ANSWERED MY REQUEST,

GO TO PAGE 2B

PAGE 2 B

NOR IN ANY WAY HINTED AS TO THE OFFICE location of H.S.A., ONLY STATING THAT Ms.    TATE is THERE REPRESENTATIVE AT DADE Correctional INSTITUTION.

G: LEILANI INSUA
MEDICAL DIRECTOR AT DADE C I

H: Julio POVEDA
   DOCTOR, CHIEF HEALTHCARE OFFICER
DADE C. I.

I: MARTHA HUMPHRIES
   WARDEN
REGIONAL RECEPTION AND MEDICAL CENTER, LAKE Butler

J: HEALTHCARE SERVICES ADMINISTRATOR
   FLORIDA'S HEALTHCARE CARRIER
   LAKE Butler, FLORIDA (RMC)

K:      CUMMINGS
   WARDEN
   DADE C. I.

GO TO PAGE 3

II  STATEMENT OF CLAIMS          Page: 3

THE DATE FOR WHICH I SHOULD HAVE KNOWN OF MY
INJURIES IS FEBRUARY 25, 2010, IN THAT IS THE DATE OF
CHRISTOPHER BEISER'S LAST DAY OF INTERSHIP AS A MEDICAL
STUDENT AT RECEPTION AND MEDICAL CENTER, HOSPITAL WARD,
LAKE BUTLER, FLORIDA; AND THAT WAS THE DATE IN WHICH HE
CAME TO MY BEDSIDE IN THE WARD, WHERE I WAS
TEMPORARILY HOUSED AND APPOLOGIZED TO ME FOR GIVING ME
TOO MUCH ANTIBIOTICS, WHICH CAUSED ME A "KIDNEY BURNOUT,"
AS WELL AS SEVERE EQUILIBRIUM PROBLEMS. HOWEVER, IT
WAS NOT UNTIL MARCH 07, 2011 AT RMC THAT I WAS
PERMITTED TO SEE MY MEDICAL RECORDS FOR MY STAY AT THE
WARD FROM JANUARY 3, 2010 UNTIL FEBRUARY 19, 2010.
    THE MATTERS IN THIS SUIT PRESENTED THROUGHOUT THE FORGOING
HAVE BEEN PROPERLY GRIEVED AND THE GRIEVANCES ARE IN THE ATTACHED
APENDIX A, EXHIBITS 1 THRU 16. MATTERS PERTAINING TO THE GENTAMICIN
ANTIBIOTIC DRUG, CONCERNING DOSAGE AND PRECAUTION, IS IN APPENDIX B.
    A COPY OF THIS LAW SUIT HAS BEEN SENT TO FLORIDA'S DEPARTMENT
OF FINANCIAL SERVICES, 200 E. GAINES STREET, TALLAHASSEE, 32399-0301,
NAMING ALL POTENTIAL DEFENDANTS.
                    STATEMENT
    DUE TO THE FACT THAT I HAD A BOIL REMOVED FROM MY BUTTOX
ON 12-31-09, AND BECAUSE OF MEDICAL COMPLICATIONS; ON JANUARY
3, 2010, I WAS ADMITTED TO RECEPTION AND MEDICAL CENTER
HOSPITAL WARD IN LAKE BUTLER, FLORIDA. I STAY FROM JANUARY 3, 2010,
UNTIL FEBRUARY 19, 2010 AND FROM THERE TO JACKSONVILLE HOSPITAL
UNTIL LATE FEBRUARY 23, 2010, FOR A RELATIVELY EASY HEALING PROCESS.
    I WAS ADMITTED TO RMC WARD ON JANUARY 3, 2010 AND BLOOD
WORK WAS DONE JANUARY 4, 2010. ALSO, ON 01-03-10, I MET
MY RESIDENTIAL DOCTOR (CHRISTOPHER BEISER) AND HIS IMMEDIATE
SUPERVISOR AS WELL AS REGIONAL DIRECTOR (PAGE ARMAND SMITH).

                GO TO PAGE 3A

Page 3A

AT THE Time of meeting Both DocTors, They WENT out of THEIR WAY To EstAblish TRust IN A DocToR/PATIENT RelATioNship. Also, THE NEcessity of BeiNg INJEcTED INTRAVENOUSly with ANTibioTics (which I was) AND THE DANgERS of THE DRug WERE ExplaiNED To ME. WhAT ELse, THAT WAS ExplaiNED To ME, WAS THE fACT THAT I WAS DiaBETic, But my Blood TESTS ShowED No REAl pRoblEM AND THAT my HEAliNg pRocEss WAS RelATively Simple with No FoRsEEABle pRoblEMS, But THAT I Would Be ChEckED pERiodically To makE SuRE No pRoblEMs ARosE.

Since my STay, I HAVE BEEN TRying To REcEiVE Copies of my mEdicAl REcoRd FoR THE TimE PERiod FoR which I was IN RMC MEDicAl WARd, oNly To BE DENiED THosE Copies, EiTHER BEcAuse I HAd No moNEy To pAy FoR THEM oR BEcAuse of (As Ms NAVARRo IN MEDicAl REcoRds AT DAdE CoRREcTioNAl iNSTiTuTioN puTS iT), THE fAcT THAT THE DEpARTmENT of CoRREcTioNs DoES NoT HAVE To givE MEDicAl REcoRds To INmATES who ARE SuiNg THE DEpARTmENT. I HAVE Also TRiED To geT my MEDicAl REcoRds ExTENDiNg FRom My RElEAse FRom RMC's MEDicAl WARd oN FEBRuARy 19, 2010 To THE pRESENT DATE, BuT FoR THE mosT pART, I HAVE BEEN DENiED THE REcoRds of pRESENT AND Two yEARS pRioR To my RMC MEDicAl WARd STay. HowEvER, IN MARch of 2011, Ms BillINgsley of iMpATiEN REcoRds AT RMC, AllowED mE To ExamiNE THE R.M.C. MEDicAl REcoRds, which ExTEND FRom JANuARy 3, 2010

Go To Page 3B

PAGE 3B

To February 19, 2010; and which led to this lawsuit.

By Doctor Beiser and Doctor Smith's instructing me Before hand (which Formal Grievance 1103-209-118 Response, Paragraph 3, Exhibit 8, refers to, answered by V. Jorge Caraballo, M.D.) about the necessity of being injected with antibiotics, and the dangers for which I may encounter; they showed deliberate indifference to my medical needs by having the medical knowledge that by subjecting me to the Gentamicin antibiotic, they were putting me in harms way of an excessive risk to toxicity poisoning, but neither Doctor took the precautions necessary to prevent the disaster. Instead, with the foreknown knowledge, I was subject to the risk of toxicity poisoning, without the due precautions suggested by the drug or in medical journals, of taking blood samples and/or urine samples every 3 doses or 3 days to test for toxicity levels, so as to prevent renal injury as well as inner ear damage. By their unexcusable actions of allowing me to undergo approximately 117 doses of the antibiotic drug Gentamicin they committed reckless or callous indifference.

On January 4, 2010, I had a blood test, while staying at RMC's Hospital ward. I was unaware of those results until 03-07-11. The test showed my HBA1C level (sugar) as being a little high; and my renal creatinine level at 1.5, which compared to the 1.2 that is considered normal, is also a little high, but acceptable. Still, though, the acceptable 1.5 level should have indicated a possible renal dysfunction, that if left unwatched, could have been dangerous to my health.

Because of bacterial response in the cavity of the recently removed boil that would have the tendency to prevent the wound from healing properly and becoming infectious; on January 5, 2010, or

Go to 3C

Page 3 C

There abouts, I was injected with antibiotics intravenously while staying at RMC's Hospital ward. The following is the schedule in which the antibiotics were administered, including the names and prescribed doses of each:

1) Gentamicin from 1-5-2010, 120 mg. every 8 hours for 7 days, administered with 1gr ampicillin for 7 days.

2) Gentamicin renewed 1-12-2010 at 80 mg every 8 hours for 7 days, administered with 1gr ampicillin for 1 day. Discontinued 1-13-2010.

3) Ceftazidine 2gr. from 1-13-2010 for 5 days, administer with the Gentimicin.

4) Gentamicin renewed 1-19-2010 at 80 mg every 8 hours for 7 days, administered with Ceftazidine 2gr renewed for 7 days

5) Gentamicin renewed 1-24-2010 at 80 mg every 8 hours for 7 days, administered with Ceftazidine 1gr renewed 1-24-2010 for 7 days

6) Gentamicin 80 mg every 8 hours for 7 days renewed 2-1-10, and again on 2-9-10 at 80 mg every 8hrs for 7 days, to be used with Ceftazidine 1gr for 7 days renewed 2-1-10 and 2-9-10

7) The Gentamicin was reduced from 80 mg to 40 mg every eight hours on 2-11-2010

8) All intravenously fed antibiotics were stopped on 2-12-2010.

My creatinine/Bun level was check on 1-4-2010 and was 1.5/30. No other blood work was done from 1-4-2010 until 2-11-2010; or no other tests,

Go To Page 3 D

Pag 3D

EVEN THOUGH I WAS INTRAVENOUSLY INJECTED NON-STOP FROM 01-05-2010, UNTIL 02-11-2010, ALTHOUGH GENTAMICIN IS A CHEAP DRUG AND ANY MEDICATION THAT PRODUCES TOXIC POISONING OVER AN EXTENDED TIME, IS DANGEROUS, IF ALLOWED TO BE CONTINUOUSLY INJECTED, WITHOUT TESTS TO ENSURE TOXICITY DOES NOT RUN RAMPED, NO TESTS WERE GIVEN TO ME UNTIL MY TOXICITY LEVELS OF GENTAMICIN POISONING WAS SO HIGH AS TO CAUSE ME INJURY TO MY KIDNEYS AND PERMANENT DAMAGE TO MY INNER EAR. ON 02-11-2010, MY CREATININE / BUN LEVEL WAS 2.8/35 AND ON 02-12-2010 THE LEVELS WERE 2.9/35.

ON MONDAY 02-15-2010, DOCTOR BEISER CAME TO MY BEDSIDE TO TELL ME THAT I HAD A KIDNEY BURNOUT AND THAT MY KIDNEYS WOULD BE INTRAVENOUSLY FLUSHED FOR THE NEXT 5 DAYS. WITH MY CREATININE / BUN LEVEL BEING 2.3/23 ON 2-17-2010, I WAS SENT TO JACKSONVILLE HOSPITAL, WHERE MY KIDNEYS WERE AGAIN FLUSHED. FROM THE EVENING OF FEBRUARY 19, 2010, THROUGH THE LATE EVENING OF FEBRUARY 23, 2010, I WAS ADMITTED TO JACKSONVILLE HOSPITAL AND MY KIDNEYS WERE FLUSHED.

DURING VARIOUS TIMES BETWEEN JANUARY 25TH AND FEBRUARY 19, 2010, I LET DOCTOR BEISER KNOW OF VARIOUS SYMPTOMS THAT I WAS HAVING, INCLUDING NAUSEISM AND VOMITING TO SUCH AN EXTENT THAT EVERYTHING IN MY STOMACH, I PUKED UP, AFTEN BECOMING DEHYDRATED, BUT THIS NOR OTHER ~~SYMP~~ SYMPTOMS OF DIZZINESS AND LACK OF BALANCE PROMPTED BLOOD WORK TO DISCOVER THE REASON OF MY

GO TO PAGE 3 E

PAGE 3E

NAUSEA AND VOMITING, NOR THE DIZZINESS OR LACK OF BALANCE, EXTREME CHILLS OR URINATION DISORDERS, UNTIL FEBRUARY 11, 2010 AND AGAIN ON FEBRUARY 12, 2010.

Four DAYS OR LONGER, I WAS BOTH INJECTED WITH ZOFRAN AND PHENERGAN, AND TOOK THE MEDICATION ORALLY AS A MEANS TO REDUCE OR PREVENT VOMITING. THIS IN ITSELF SHOULD HAVE BEEN ENOUGH WARNING TO PROMPT SERIOUS ACTIONS TOWARD FINDING OUT WHAT WAS WRONG, ESPECIALLY SINCE NEITHER THE ZOFRAN, NOR THE PHENERGAN WORKED, BUT IT WAS NOT. THEN ON FEBRUARY 11, 2010, I THREATENED TO STOP TAKING THE ANTIBIOTICS IF MY SICKNESS DID NOT CHANGE AND ON FEBRUARY 12, 2010, I SIGNED A REFUSAL, REFUSING ANYMORE INJECTED ANTIBIOTICS. MY REFUSAL WAS DUE TO AN EXTENSIVE PERIOD OF HEAVING UP EVERYTHING IN MY STOMACH, INCLUDING FOOD; WATER; SALIVIA; AND DRY WRETCHING UNTIL I COULD NO LONGER TALK FROM THE THROAT PAIN.

In THAT THE STATE AUTHORIZED CHRISTOPHER BEISER AND PAGE ARMAND SMITH TO ACT IN MY BEHALF, EVEN GIVING BOTH MEN A BADGE OR POSITION OF AUTHORITY TO DO SO, IN THEIR DECISION MAKING ABILITIES AND ACTIONS IN WORKING FOR FLORIDA'S DEPARTMENT OF CORRECTIONS, OR AS AN AGENT OF THE PRISON HEALTHCARE SERVICES; DOCTOR BEISER AND DOCTOR SMITH ACTED UNDER "COLOR OF STATE" — A CONDITION OF THIS 42 U.S.C.A. 1983 LAWSUIT.

DR. BEISER KNEW THE CONSEQUENCES OF HIS ACTIONS, SHOWN BY HIS EXPLAINING THE NECESSITIES AND DANGERS OF USING ANTIBIOTICS ON JANUARY 4, 2010; AND EVEN WITH THE KNOWLEDGE THAT HE WAS SUBJECTING ME TO AN EXCESSIVE RISK OF HARM OR OTHER OBJECTIVELY UNCONSTITUTIONAL CONDITION, BY NOT ORDERING AND INSISTING ON PERIODIC BLOOD WORK TO ENSURE THE PREVENTION OF TOXICITY POISONING, HE CHOSE TO CONTINUALLY TREAT ME WITH A CHEAP,

Go To 3F

Page 3 F

Highly Toxic antibiotic. His Decision To induce The Drug without ordering Blood work To prevent Toxic poisoning showed deliberate indifference To my Medical Needs.

1) Doctor Beiser led me To Believe That He was an Experienced Doctor, Even Signing my charts and other Records in my Hospital stay Medical Jacket as "Doctor Beiser", only To Tell me on His last Day of Internship at RMC, That He was Not A Doctor, But only A Medical Student, who Had never Experienced complications Like mine, Before. This took place at my Bedside on Friday February 26, 2010 or the Day Before.

What is Even worse, Though, is The Fact That, Through Soliciting Florida's Health Department, I Found out That Christopher Beiser was not Licenced or Registered with Florida's Health Department — A must according To State law Concerning nurses, interns and Doctors employed in The State. The Department of Corrections put in charge of my Healthcare, a medical Student unlicenced By the State, who posed as my Doctor, when He Had no idea as To The procedures He was Expected To undergo in my Healing process. and Because He was not Licenced To participate in The Medical Field of The State of Florida in That occupation, Christopher Beiser's overall Conduct and intent involved Reckless or callous indifference.

2) Dr. Page Smith, Personally, Explained as Being Dr. Beiser's Supervisor is also named in This Suit as Being at Fault, both medically and By Neglect. As Doctor Beiser's immediate Supervisor, and as a person advanced in the Medical Field, it was The Responsibility of Dr. Smith, at Some Point, To oversee The actions of Doctor Beiser in His Duties and Knowledge of caring For me.

Go To 3 G

PaGe 3 G

in Knowing That Doctor Beiser was an unexperienced medical student and unlicenced in the State of Florida, Dr. Page Smith, as Dr. Beiser's immediate Supervisor and The Department of Corrections Regional Medical Director, did shed his Responsibility by failing To do his Job To The Degree NECESSITATED by his Supervisory Position for which he Served in his Personal capacity and under "Color of State" That in All Probability would have either Prevented or lessen The injuries done To my Person, Doctor Smith, by his Experience in The Field of Medicine, knew of The Dangers of Allowing a non-licenced Medical Student To operate on his own Accord, without Supervision or Follow Through Supervision To Assure That Christopher Beiser operated in Such a manner as To Prevent The injuries caused by Doctor Beiser, by his Failure To Take Simple and Rudimentary Basic Precautions To Gentamicin poisoning.

IF Not For Doctor Smith's Failure To instruct and Supervise To make Sure instructions are obeyed, in All Likelihood The Toxic poisoning For which I Experienced would have Never Happened or have been Seriously Reduced in Damages. By Failing, as Doctor Beiser's immediate Supervisor, To oversee Christopher Beiser's procedures in Handling The Healing of my person; and in Not instructing Dr. Beiser To perform periodic Blood Test To make sure of Toxicity levels, For The purpose of Preventing Renal or inner Ear Damages; or, if instructing, Fail To ensure That Said instructions were carried out To The Letter; Doctor Page Smith Showed Diliberate indifference To my Medical Needs, by knowing of The Excessive Risk in my Not Receiving Blood work To Prevent Toxicity levels From Being Too High and causing me injury, yet, He chose Not To Follow Through in his profession or Personal capacity and Allowed me To Became injured Due To his carelessness.

Go To Page H

PAGE 3 H

Therefore, Doctor Smith is Responsible, by His Actions or Failing to Act, For my Renal injury; inner ear Damage; and the Consequences of me Being Anemic; with catastrophic injury that prevents me From Multi Tasking, Such As Standing and Walking at the Same time. Doctor Smith and Christopher Beiser are equally Responsible For my injuries, that each Contributed to by the Showing of His Deliberate indifference to my Medical needs, which Has Resulted in Wanton Pain and Suffering that was not neccesary, except through their Failing to act or Actions in each's personal capacity. Their Actions and overall Conduct and intent involved Reckless or callous indifference. Said Actions Displayed willful; Wanton; or Gross Misconduct.

3)      Warden Martha Humphries, Assigned to Reception and Medical Center at Lake Butler From the time of my Admittance into RMC Medical Ward on January 3, 2010, until Such time as that in which I was Transferred to Dade C.I. in ~~th~~ April of 2010; in that She officiated As D.O.C's Representative, is also named in this Suit. I Grieve the Actions of Warden Martha Humphries, in Here Representation of the Secretary of the Department of Corrections, For Her Part in Advocating Such Conditions as Hiring Medical Agents that are incompetent in Doing the Job For which they are Hired; or if Competent, laxed to Binding Rules, Laws, and Procedures of their Medical Profession, Simply Because the Department's Health Care Policy, that allows them to Proceed in their occupation, without the guidence or Supervision or intervention by a Higher Power or Source of Power that instills Safety and Due Care to an inmate Patient; by Enforcing Employees to obey, with Consequences, if not, a Procedure that insists on Said Care and Safety.

Go To Page 3 I

Page 3 I

By Warden Humphries authority invested in her to Supervise the Running of Reception and Medical Center in Lake Butler, Florida; she acted in and by the "Color-of-State", in her "Personal Capacity" and is Responsible for the hiring of Medical students, such as Doctor Christopher Beiser, who have not the adequate Experience, nor are licenced by the State of Florida's Health Department, both a must for the partaking of adequate Healthcare of an inmate. It is also the Warden's Duty to ensure an inmate's safety through Rules and Regulations in place that provide adequate supervision of, not only medical students, but those in charge of instructing and forcing said students to comply with basic medical procedures, so as not to result in the injuries caused me.

If not for the laxed control and supervision of the Warden in her acquisision of Responsibility to her assigned post, acting in behalf of the Secretary of the Department of Corrections, to maintain a level for which medical standards of Supervisor Doctors; Residential and Intern Doctors; and Medical students are derived in Lake Butler, Florida, by the powers invested in her by the presiding Government and legislation; Medical Supervisor Doctor, page Smith, would have been held Responsible for his failure to to his Job in a way beneficial to the medical standards demanded by law; and monitored by such factions where he would be forced to comply with the standards acceptable as normal to the medical Community. To be in a supervisory position overseeing the actions and treatments of a medical student in such a way

Go to page 3 J

Page 3 J

as to allow the student to act upon unsupervised intentions, or supervision lacking in authority and without correction in order to avoid injury, is preposterous and contrary to standard medical care.

For Warden Humphries to hire or conduct herself in any aspect of the hiring of medical students, without also ensuring that they obey and act upon the medical operation for which they serve as doctors, in such a way as to prevent disaster; or the acquiring of medical supervisory staff, who fail to supervise; without having some sort of policy to determine inadequate behavior and the ability to rectify the situation, thereby allowing inmates to essentially pose as guinea pigs, is deliberate indifference to my medical need. Warden Humphries has shown her deliberate indifference to my medical needs, by allowing a medical student, unlicenced and unsupervised; by the powers invested in her, to practice as a medical doctor without knowing what he was doing, to such a degree that I was injured by the medical students unsupervised actions. ███ in all likelihood Warden Humphries knew that if said medical student was allowed to serve as a doctor without supervision; or with supervision, laxed in its effect; Christopher Beiser's efforts would be substandard, exposing me to an excessive risk, yet, as the controlling power of RMC, she allowed Christopher Beiser to pose as my doctor, causing me unnecessary pain and suffering do to Warden Humphries actions.

Another issue as to Warden Humphries policies is that upon my release from the hospital ward, I was

Go to Page 3K

Page 3K

anemic and yet, I was put into a dorm during the winter, that had very little heat and where inmates were forced to go out into winter temperatures, if it wasn't raining and recreation was called, regardless of their medical conditions. During that time, twice I was admitted to the emergency room because of uncontrolled shaking, where I was so cold that I could not function properly. Many a night, I slept fully dressed with two pair of pants, two blankets and two jackets, and yet I shook all night without sleep. During my stay at RMC for the two months preceeding being transferred to Dade C.I., I was forced to undergo the pains and mental sufferings associated with being anemic, without heat or the proper clothes to keep me warm. It was deliberate indifference of Warden Humphries to force a policy that made me go to recreation no matter how cold it was outside, nor how cold I was, even during moderately chilly days, due to my being anemic.

In that the warden's staff knew of the excessive risk caused me, to feel pain and mental anguish due to the camps policy sanctioned by Warden Humphries, I was forced to undergo that risk, without exception for my physical dilemma, and made to endure pain and suffering for what amounts simply to the warden's control issues.

In the later part of April, I was transferred to Dade Correctional Institution and put in an open bay dorm A1127 S until such time as a handicap cell in H dorm opened for me to occupy. During my stay in a dorm I was supplied inadequate clothing to keep me warm and with the dorm's windows opened most of the time and

Go to Page 3 L

Page 3 L

A ceiling fan directly over my bed I was forced to undergo much pain and torment due to my being anemic. However, the Department of Corrections medical staff, had no idea as to my condition, even though my medical jacket or records plainly showed the case to be. Ms. Dwares diagnosed me being as such in September of 2010, and no one else did before that time.

However there are two other doctors who are instrumental in this law suit, with their actions or failure to act so intwind with the suit involving the doctors and warden at Lake Butler, Florida, that it is impossible to seperate the actions of either; in that failing to act responsible, Doctor Julio Poveda and Doctor Jorge Aguilar acted in such a way as to prevent me from recovering partial or fully from my equilibrium problem. Their actions, or failure to act as reasonable prudent likemind professionals would act, caused me unnecessary pain and sufferings. Their knowledge of my situations, outlined by my medical records and loss of balance, associated to multi tasking and equilibrium, as well as my renal creatinine/bun levels and hemoglobin levels which indicated anemic, were instrumental in the non responsiveness of their actions that denied me the diagnoses and treatment as a means of curing or lessening the inner ear damage that causes an equilibrium dysfunction.

The irresponsible actions of Doctor Poveda, Cho; and Doctor Aguilar were of such, that knowing of the significant excessive risk of me being confined to a wheelchair for

Go to page 3M

Page 3M

THE REST of MY LiFE; THEY SHOWED DELiBERATE iNDiFFERENCE To MY MEDICAL NEED, BY DOCTOR AGUILAR DENYING ALL ASPECTS OF MY KIDNEY AND INNER EAR INJURY, SO AS NOT TO HAVE TO DEAL WITH IT OR PRESCRIBE MEDICAL TREATMENT THAT MIGHT ELIMINATE THE INJURY DAMAGE; AND DOCTOR POVEDA is AT FAULT, AS MY CMO, FOR NOT INSISTING ON A NEUROLOGIST CONSULTATION, THAT iN ALL PROBABILITY WOULD HAVE LED TO MY EQUILIBRIUM PROBLEM BEING LESSENED, iF NOT REVERSED COMPLETELY, in THAT HIS PERSISTANCE WOULD HAVE ADDRESSED THE ISSUE iN TIME FOR IT TO BE PARTIALLY, iF NOT COMPLETELY CURED. THESE ACTIONS OR FAILURE TO ACT MUST BE CONSIDERED PART of THE CAUSE OF PERMANENT IMPAIRMENT AND INSEPARABLE FROM THE REST of THE LAWSUIT. EACH DOCTOR OPERATED iN HIS PERSONAL CAPACITY.

INVOLVED iN THE LAW SUIT is ALSO THE WARDEN OF DADE CORRECTIONAL INSTITUTION AT THE TIME (WARDEN WILLIAM CHURCHWELL), WHO I GRIEVED MY FORMAL GRIEVANCES TO CONCERNING MY RENAL DISORDER, EQUILIBRIUM DYSFUNCTION AND THAT FACT THAT I AM ANEMIC; AND YET HE FAILED TO LOOK INTO THE MATTER TO THE EXTENT NECESSARY TO GRANT ME RELIEF iN THE MANNER OF MEDICAL PROGNOSIS AND TREATMENT TO OVERCOME OR LESSEN THE PROBLEMS ASSOCIATED WITH EQUILIBRIUM AND BEING ANEMIC; WITH RENAL PROBLEMS THAT DEAL WITH DIABETIES DUE PRIMARILY TO THE LACK OF A SUFFICIENT DIABETIES/PREDIALYSIS DIET; AND FAILURE TO RENEW DIABETIES MEDICATION iN SUCH A WAY AS TO REFRAIN FROM DOSES OF MY DIABETIES MEDICINE BEING MISSED.

FURTHERMORE, Ms. LEILANI INSUA, MEDICAL DIRECTOR'S ACTIONS AT DADE C.I. ARE RAISED iN HER DENIAL OF A NEUROLOGIST CONSULTATION FOR ME, ORDERED BY DOCTOR POVEDA AND Ms TATE iN THAT SHE is FLORIDA'S HEALTHCARE SERVICES ADMINISTRATOR.

DR. AGUILAR USED FRIVOLOUS INFORMATION TO TRY TO HIDE THE TRUTH

Go To Page 3N

Page 3 N

From my person, so as not to have to deal with the situation in light of seeing to diagnoses and treatment. Doctor Poveda, while ordering a neurologist consultation as a means to overcome my equilibrium problem, willingly let the matter die with the refusal of Ms. Leilani Insua's (Medical Director at Dade C.I.) to allow me a meeting with a neurologist, when in fact, Dr. Poveda was my C.H.O. and had he persisted by going to a higher authority, in all probability, his opinion as my C.H.O. would have been acknowledge and responded to as a medical need necessary to return me to a healthy inner ear, relating to hearing and balance. By Doctor Poveda's refusing to go one step further in insisting that I receive a diagnosis and possible treatment from a neurologist, subjected me to a permanent loss of hearing and equilibrium.

In that Doctor Poveda, Doctor Aguliar and Ms Leilani Insua operated under the powers invested in them, as well as did Warden Churchwell, they each operated under "Color of State" and are being sued in their own personal capacity.

Finally, Ms Tate at Dade C.I. and her counterpart at RMC, Lake Butler are being sued as representative of the faction for which advocates all medical decisions, (Healthcare Services Administrator) Florida's Healthcare provider at the time the incidents took place at Lake Butler, up and until the present.

The Healthcare Services Administrator in Lake Butler is also responsible for me not receiving hearing aids as recommended by hearing test and recommendation on

Go to 3 O

Case 1:12-cv-20790-MGC   Document 1   Entered on FLSD Docket 02/27/2012   Page 21 of 24

Page 3 O

February 22, 2011, To Be Picked up April 22, 2011, But which the H.S.A. Refused to pay For, causing maybe a partial cure to my Equilibrium problem, or at least better hearing ability.

Furthermore, Even Though This Happened less than a month ago and has not Been grieved as of yet, I wish to include Warden Cummings of Dade C.I. For His Part in Giving me a Improper Medical Diversion Transfer To Jefferson Correctional institution in Montecillo, Florida, where Due to the much colder temperatures of north Florida and the Fact that I am still anemic, I undergo much pain, suffering, and mental anguish Due to my Being Extremely cold most of the time. In that my Medical Records Shown By Blood Test on 12-28-2011, That my Hemoglobin level is low and That I am anemic, and ones Health issues are relevant to His Transfer, Warden Cummings Had to Know of my medical condition, yet, He showed Deliberate indifference to my Health care Needs, By Transferring me To an institution in ~~South~~ North Florida, irregardless of the Fact That I would feel the cruel and unusual punishment of pain, Sufferings and mental anguish Due to my low Red Blood count and Associated with Being anemic.

Warden Cummings Knew That He was Exposing me To an Excessive Risk of unnecessary pain and yet He still chose to have me Transferred to an area Known to Be much colder than where I was.

This Suit Addresses Warden Cummings in His "Personal Capacity" and asserts That He operates under the "Color of State."

Go To Page 3 P

III                    Relief          Page 3 P

1) I would like Compensated Two Hundred and Fifty Thousand Dollars For all Pain, Suffering and Mental Anguish that I have undergone Since and During my stay at Reception and Medical Center Hospital Ward in Lake Butler, Florida commensing on January 3, 2010.

2) I would like to be Compensated a fair amount for any pain, suffering or Mental anguish that I might be Forced to endure in the future, Due to my loss of Hearing and Equilibrium problems and the Fact that I am anemic and even with treatment, I will probably be so to a certain extent in the Likelihood that I have a Renal Dysfunction.

3) I would like compensated $250,000ºº (Two Hundred and Fifty Thousand Dollars) For my Hearing loss or Aggravated Condition Due to inner ear damage.

4) I would like $500,000ºº (Five Hundred Thousand Dollars) For my Equilibrium problem that prevents me from Multi tasking and cause me to Remain in a wheelchair for the Rest of my life.

5) I, also, would like $500,000ºº (Five Hundred Thousand Dollars) From Christopher Beiser and Doctor Page Smith, each for the part they played in Denying my Healthcare Need. (Punative Damages)

6) I would like $200,000ºº Punative Damages From Warden Martha Humphries, Warden William Churchwell, Warden Cummings, Doctor Julio Poveda, Doctor Jorge Aguiar, Ms. Leiloni Isua, and Ms Tate For their parts, that have Left me permanently injured and which have caused me undo pain in the Past.

Go To Page 3 Q

Page 3 Q

## VII   Jury Demand

Yes, I Demand a Jury Trial.

In that I have Requested and Grieved Receiving my Medical Records from my RMC Hospital Ward Stay from January 3, 2010, through February 19, 2010; and my Medical Records from Two Years Before January 3, 2010; as well as those from February 19, 2010 up and until the Present Date of February 23, 2012, But in that I Have Not Received the Requested and Grieved Record; I pray this Court Order that I Receive my Medical Records as a Course to Show why I Deserve Relief. Having Examined my Medical Records at Reception and Medical Center, Lake Butler inpatient Records Department with the Permission of Records Keeper Ms. Billingsley and Having Read Various American Medical Journals, I Have Done Enough Extensive Research To Know That My 8th Amendment Constitutional Rights To Healthcare, which Refrains From Cruel and Unusual punishment Due to Unnecessary Pain and Suffering Has Been Violated. I Examined the Medical Records During my Medical Stay in the Winter of 2011, on March 7, 2011.

If this Court will allow me a Motion of Discovery in which my Medical Records are Received by Me, Such Records will act as Documents Showing the Necessity For Relief. Also, the Forthcoming Discovery will Be Used to Obtain Defendants' Address, which the Department Refuses To Give.

Go To Page 3R

*Page 3R*

(Rev. 09/2007) Complaint Under The Civil Rights Act, 42 U.S.C. § 1983

Signed this __23__ day of __FEBRUARY_____, 20_12_

*James Melvin Cramer* Y026665
(Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct. *(optional)*

Executed on: *February 23, 2012*

*James Melvin Cramer* Y02665
(Signature of Plaintiff)

JAMES MELVIN CRAMER Y02665
JEFFERSON CORRECTIONAL INSTITUTION
1050 BIG JOE ROAD
MONTICELLO, FLORIDA 32344

A COPY OF THIS COMPLAINT WAS MAILED TO THE DEPARTMENT
OF FINANCIAL SERVICES, 200 E. GAINES STREET, TALLAHASSEE,
FLORIDA 32399-0301 ON FEBRUARY 24, 2012, WITH MY
NOTIFICATION OF INTENT

ACCORDING TO CHAPTER 33-